IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 01-37-M-DWM-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHELLE WING, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.  Introduction

On November 20, 2009, the Court revoked Michelle Wing's second term of supervised release and sentenced her to thirty-three months in prison.  On appeal, Wing argued for the first time that the Court lacked jurisdiction to revoke her supervised release because the term had not commenced.  On October 18, 2010,

the Ninth Circuit remanded the case so the Court could address Wing's jurisdictional argument.  For the reasons that follow, the Court finds that it had jurisdiction to revoke Wing's supervised release as it did.  To hold otherwise would mean a relatively minor infraction of the conditions of supervised release would deprive the sentencing court of the power to deal with major breaches of trust that are unknown to the sentencing judge, but which took place in the period of supervised release.

## II.  Background

Wing pleaded guilty to bank embezzlement in 2001.  She was sentenced to six months in prison followed by five years of supervised release.  Her supervised release commenced in February 2004.

On April 24, 2008, a petition to revoke her supervised release was filed. The petition alleged Wing violated four conditions of her supervised release.  The violations were based on Wing receiving funds from the Washington State Employment Security Division, incurring new debt without prior approval of the probation officer, and failing to submit a truthful monthly report.  On June 6, 2008, the Court found Wing had violated all four conditions, and sentenced her to three months confinement, followed by thirty-three months of supervised release. The Court allowed Wing to self-report to prison.  She did so on August 29, 2008.

What was not known to the court or to probation were the other crimes Wing had engaged in during this period of release and supervision.

In August 2008, after the Court revoked Wing's supervised release but before she commenced her term of imprisonment, the FBI informed Wing's probation officer of allegations that she had embezzled $700,000 over the past year and a half.  The probation officer briefed the Court on these new pending violations that same month.  In November 2008, while serving her three month sentence, Wing was then charged in the Eastern District of Washington with nineteen individual bank fraud counts, one count of conspiracy to commit bank fraud, and two counts aggravated identity theft.

On November 25, 2008, the probation officer submitted a second revocation petition.  The petition listed the "Date Supervision Commenced" as November 26, 2008–Wing's expected release date–and alleged Wing committed four additional violations of her terms of supervised release.  The first violation alleged Wing committed another federal crime based on her pending indictment in the Eastern District of Washington.  The second violation alleged that Wing left the judicial district without permission.  The third and fourth violations alleged Wing failed to inform her probation officer of employment that began in December 2005 and continued through July 2008.  The conduct in all four violations occurred during

Wing's term of supervised release that commenced in February 2004, and were breaches of trust the Court did not learn of until after the June 2008 revocation hearing.  The Court issued a warrant for Wing's arrest on November 25, 2008.

Wing was released from prison on November 26, 2008, and appeared that same day in the Western District of Washington.  She was advised of the pending indictment in the Eastern District of Washington, as well as the pending revocation petition here.  She was remanded to the custody of the United States Marshall Service to be transported to the District of Montana upon conclusion of the pending criminal proceedings in the Eastern District of Washington.

On October 5, 2009, the United States District Court for the Eastern District of Washington sentenced Wing to eighty-six months in prison.

On November 20, 2009, the Court held a revocation hearing in this matter. Wing admitted to violating the four conditions of supervised release alleged in the petition.  The Court told Wing that had it known "all of the facts and circumstances that led you to breach the trust of the Court when I revoked your supervision the first time, and the boldfaced lies that you stood here and told me, and had I known that you were engaging in that kind of behavior at the time, Lord knows what would have happened.  It sure wouldn't have been a three-month sentence." Tr. 31:13-20, Nov. 20, 2009 (dkt #79).  The Court revoked Wing's

term of supervised release, and sentenced her to thirty-three months in prison to run consecutive to the sentence imposed by the Eastern District of Washington, with no term of supervised release to follow.

On November 25, 2009, Wing appealed, arguing the Court lacked jurisdiction to revoke the term of supervised release. According to Wing, the issue raised on appeal was whether "the district court possess[ed] jurisdiction to revoke a term of supervised release and imprison Ms. Wing, even though the term of supervised release [] had not started?" Def.'s Br. 3 (dkt #83). She did not raise this issue before this Court prior to her appeal.

In a memorandum disposition dated October 18, 2010, the Ninth Circuit remanded the case so this Court could consider the issue, or whether "the revocation pertained (or could pertain) to Wing's first period of supervised release." Mem. (dkt #80). The Ninth Circuit issued the corresponding mandate on November 9, 2010.

On November 12, 2010, the Court ordered the parties to submit a brief on the issues raised on appeal, and they were given until December 3, 2010 to request a hearing on the matter. Wing submitted her brief November 24, 2010, and the government submitted its brief on November 26, 2010. Neither party asked for a hearing.

-5-

### III.  Analysis

A district court may "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ."  18 U.S.C. § 3583(e)(3).  "Whether the [Court] had jurisdiction to revoke [Wing's] supervised release is a question of law [reviewed] de novo.  United States v. Vallejo, 69 F.3d 992, 994 (9th Cir. 1995).

Wing argues the Court lacked jurisdiction to revoke her supervised release in November 2009 because the term had not commenced.  18 U.S.C. § 3624(e) provides that supervised release "commences on the day the person is released from imprisonment" and is under the "supervision of a probation officer."  See also United States v. Johnson, 529 U.S. 53, 56 (2000) ("[18 U.S.C. § 3624(e) directs that a supervised release term does not commence until an individual is 'released from imprisonment.' ").  Wing insists that the petition to revoke her supervised release and corresponding arrest warrant were issued prior to her release from prison, and that upon release from prison she was transferred to the United States Marshal Service, not the supervision of her probation officer.  Thus, she contends, her revoked term of supervised release never commenced.  Based on this proposition, she argues the Court lacked jurisdiction when it revoked her

supervised release in November 2009.  In essence, Wing's argument is her revoked term had not commenced and as such did not exist, and the Court could not revoke that which did not exist.[1]

Wing is correct that her second term of supervision had not commenced at the time the petition was filed in November 2008.  Nor when the Court revoked it in November 2009.  See Johnson, 529 U.S. at 57 ("A term of supervised release comes 'after imprisonment,' once the prisoner is 'released by the Bureau of Prisons to the supervision of a probation officer.' ").  This does not mean, as Wing insists, that the Court lacked jurisdiction to revoke her second term of supervised release.

Wing's supervised release commenced in February 2004, and it was revoked in June 2008.  Based on the violations then known to have occurred, the Court imposed a sentence of three months imprisonment followed by thirty-three months supervised release.  After that sentence was entered, the Court learned of additional violations that also occurred during the first term of supervised release.

---

[1]In support, Wing cites appellate decisions reversing the revocation of supervised release when the challenged conduct occurred after the term ended.  See, e.g. United States v. Reider, 103 F.3d 99, 103 (10th Cir. 1996) ("[Defendant's conduct] was not a violation of supervised release because the essential predicate of an active term of supervised release did not exist when the asserted violation occurred."); see also United States v. Levitt, 799 F.2d 505, 507 (9th Cir. 1986).  That, however, is not the situation here.  Wing admitted to conduct that occurred during her term of supervised release that violated the conditions.

If the Court knew of those additional violations, it would not have allowed Wing to self report to prison, or have sentenced her to only a three month term of imprisonment.  In this regard, the second revocation sentence relates back to the Court's original revocation hearing and accounts for the additional violations that were significant breaches of the Court's trust, but were not known to the Court at that time.  Simply put, the revocation challenged here pertained to the first term of supervised release.

Such a revocation is legally permissible.  In Johnson v. United States, 529 U.S. 694 (2000), the Supreme Court considered whether a district court revoking a term of supervised release could impose a further term of supervised release following incarceration.  While that issue is distinct from the one at hand, the Supreme Court's analysis of what it means to "revoke" a term of supervised release is instructive.  Section 3583(e) gives district courts both the power to "terminate" as well as to "revoke" a term of supervised release.  To terminate a term of supervised release, the Supreme Court noted, unequivocally ends it. Johnson, 529 U.S. at 704.  To revoke a term of supervised release, on the other hand, means something less.  Revoke–in the context of the statute–means to "recall" the term of supervised release, allowing it to "retain vitality."  Id. at 707. This means, "unlike a 'terminated' order of supervised release, one that is

'revoked' continues to have some effect." Id. at 706.

Applying the Supreme Court's direction here, Wing's term of supervised release was not terminated or unequivocally ended when it was revoked in June 2008.  It was recalled and continued to have some effect and vitality.  This unexpired, unterminated term provided the Court jurisdiction to revoke Wing's remaining term of supervised release upon learning of further violations that also occurred during the first term of supervised release, but which had not been revealed or disclosed to the probation officer or to the court.

This view is consistent with the purpose and scheme of supervised release.  The aim of supervised release is "to protect the public and 'to facilitate the reintegration of the defendant into the community. . . .' " Vallejo, 69 F.3d at 994 (quoting United States Sentencing Commission, Guidelines Manual § 5D1.1 comment (n.2) (Nov. 1992)).  When a defendant violates her supervised release, the court may sanction her for this "breach of trust," and in doing so the court should consider the need to protect the public from further crimes by the defendant.  United States v. Miqbel, 444 F.3d 1173, 1182 (9th Cir. 2006).  That is the case and consequence here.  The Court adjusted Wing's first revocation sentence by imposing a subsequent sentence that considered the full scope of her breaches of trust, as well as the need to protect the public from further crimes by

her.  The Court was unable to do this the first time around because Wing withheld the full extent of her breaches of trust and the Court learned of the other violations only after the term was initially revoked.  To find that the Court lacks jurisdiction in this case, as Wing maintains, would prohibit district courts from fully sanctioning defendants who violate the conditions of their supervised release.[2] More problematically, it would motivate defendants like Wing–who committed numerous, serious violations while on supervised release–to admit to a minor infraction so that the term of supervise release would be revoked.  That, under Wing's argument, would divest the court of jurisdiction to ever consider the defendant's more serious breaches of trust.

### IV.  Conclusion

Because the violations occurred during an active term of supervised release, that term had commenced and had not been terminated, and the sentence as imposed promotes the purpose and scheme of supervised release, Defendant Wing's argument that the Court lacked jurisdiction to revoke her term of supervised release is wrong.  The motion to dismiss for lack of jurisdiction is DENIED.

---

[2]Although Wing only argues the Court could not revoke her term of supervised release because it had not commenced, the inevitable extension of this argument is the Court could never revoke Wing's term of supervised release, even after it begins.

Dated this 18th day of January, 2011.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT